<pre>
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
 2                            COVINGTON
                              - - -
 3
   UNITED STATES OF AMERICA,      :  Docket No. CR 2005-17
 4                                :
                  Plaintiff,      :  Covington, Kentucky
 5                                :  Friday, February 20, 2009
            versus                :  9:30 a.m.
 6                                :
   DARYL KIMBERLY,                :
 7                                :
                  Defendant.      :
 8

 9                            - - -

10                 TRANSCRIPT OF REARRAIGNMENT
                    BEFORE DAVID L. BUNNING
11             UNITED STATES DISTRICT COURT JUDGE

12                            - - -

13  APPEARANCES:

14  For the United States:        ROBERT K. McBRIDE, ESQ.
                                  Assistant U.S. Attorney
15                                260 W. Vine Street
                                  Suite 300
16                                Lexington, KY  40507

17  For the Defendant:            DAVID F. FESSLER, ESQ.
                                  Fessler, Schneider & Grimme
18                                14 N. Grand Avenue
                                  Ft. Thomas, KY  410175
19

20  Court Reporter:               LISA REED WIESMAN, RDR-CRR
                                  Official Court Reporter
21                                35 W. Fifth Street
                                  P.O. Box 1073
22                                Covington, KY  41012
                                  (859) 291-4410
23

24          Proceedings recorded by mechanical stenography,
    transcribed via computer-aided transcription.
25
</pre>

1           (Proceedings commenced at 9:35 a.m.)

2           THE COURT:  Madam Clerk, if you would please call the

3    matter for 9:30.

4           DEPUTY CLERK:  Covington Criminal 05-17.  United

5    States of America versus Daryl Kimberly.

6           THE COURT:  All right.  If we could start with entries

7    of appearance, please.

8           MR. McBRIDE:  Good morning, Your Honor.  Bob McBride

9    on behalf of the United States.

10          MR. FESSLER:  Good morning, Judge.  Dave Fessler on

11   behalf of Mr. Kimberly, seated to my left.

12          THE COURT:  Mr. Kimberly, I have had a chance to

13   review the lengthy docket in this case, what has transpired up

14   till this morning.  And a couple of preliminary questions I just

15   wanted to ask the attorneys before we actually get into the

16   reason we're here, which is, according to your attorney, to enter

17   a guilty plea again.

18          Mr. McBride, what was -- I read through the Sixth

19   Circuit's opinion.  It's one of these three-page orders signed by

20   the clerk.  What was the conceded error that was made by Judge

21   Bertelsman originally which caused the entire case to be vacated

22   and remanded?

23          MR. McBRIDE:  In essence, it's this, Your Honor.  The

24   United States had misinterpreted the law, the federal law as it

25   related to the Kentucky law for the -- and the issue was the

1   victim's age.  And Mr. --

2          THE COURT:  So it was a legal issue, not like a Booker

3   type problem?

4          MR. McBRIDE:  That's correct, Your Honor.  It was a

5   legal issue.  And because we essentially -- because of the

6   misinterpretation by the United States, and based on our

7   position, Judge Bertelsman's ruling in our favor, we essentially

8   took away, at the time, what Mr. Kimberly was going to argue was

9   a mistake of age defense.  And so we felt that we could not fully

10  say that his plea was then knowingly and intelligently made.  And

11  so we confessed error on that issue, and that's why we're back

12  here today, Your Honor.

13         THE COURT:  All right.  Well, I just want to make

14  sure -- thank you, Mr. McBride.  I want to make sure,

15  Mr. Kimberly, that I don't run into the same problems that -- not

16  problems.  Issues.  Let's just say issues that Judge Bertelsman

17  ran into the last time.  And maybe it was because of this issue

18  that ultimately led to the remand by the Sixth Circuit.

19         You have two options.  I'm sure Mr. Fessler's gone

20  through them with you.  You can go to trial.  You can plead

21  guilty.  I know the last time you pled guilty, there was a motion

22  to withdraw the guilty plea, which was denied.

23         Then the case went up on appeal.  It was remanded.

24  And just recently, five weeks ago, apparently there was a signed

25  plea agreement, and I'm referencing a couple of pleadings that

1   were filed, a motion to continue and a notice of withdrawal of

2   motion for rearraignment which was previously filed.  So it seems

3   like -- and you certainly have a right to change your mind.  But

4   I'm sure Mr. Fessler shared this with you.  In the seven years

5   I've been a judge, I cannot recall allowing any defendant to

6   withdraw their guilty plea after they plead guilty.

7           I probably am criticized by some for taking too long

8   at pleas to make sure that, one, you know what you're giving up

9   by pleading, what the ramifications are for pleading, what the

10  potential penalties are.  I'm sure many of these things

11  Mr. Fessler's gone over with you.  What I'm trying to make sure

12  is that when we leave here, whatever happens today, we're not

13  going to get a motion by you Monday, you know, Judge, I want to

14  change my mind again.

15          This is a four-year-old case, and if you want a trial,

16  we can certainly give it to you.  But apparently, I have a signed

17  plea agreement that was handed to me right before court by the

18  court security officer.  So I just wanted to kind of give you an

19  overview of what I'm hoping to avoid here.

20          Mr. Fessler, I know you have been more recently

21  appointed.  When I say recently, I guess last fall.  In the

22  history of this case, that isn't recent.  On behalf of your

23  client, I mean, you filed the motion.  We had a phone conference

24  earlier this week to make sure that this is really what he wanted

25  to do.  Is that still what we're going to be doing this morning?

1          MR. FESSLER:  Yes, Your Honor.  We're prepared to

2    proceed with a plea of guilty.

3          THE COURT:  Is that your understanding, Mr. Kimberly?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Now, one other thing, and then I'll have

6    you sworn, and we can start with the question and answer portion

7    of this hearing.  There were several legal rulings, including

8    Judge Bertelsman's ruling on restitution.  Now, that was vacated

9    along with the judgment and the conviction.  So I know there was

10   someone from UK who testified.  I am assuming that, and I haven't

11   looked at this signed plea agreement that was handed to me.  I'm

12   assuming that that type of thing is something we're going to have

13   to relitigate again in whatever fashion the parties believe

14   appropriate if, in fact, they're going to be seeking that on

15   behalf of the victim in this case.

16         MR. McBRIDE:  Yes, Your Honor.  Although we may not be

17   seeking as extensive a restitution as we had before.

18         THE COURT:  Because certainly, the circumstances may

19   have changed on future meds and other things, future expenses,

20   given the fact that some time has passed.

21         The victim, I think there was a diagnosis of PTSD or

22   some other type of diagnosis.  Those may have changed or the

23   condition may have improved, and I know to the extent that there

24   is not an agreement in the plea agreement, there is an agreement

25   to disagree on everything.  I think that was kind of the gist of

1   what the probation officer told me.  And I'm sure that's the

2   case, given the time that has elapsed in this case.

3        So I just want to say that anything that Judge

4   Bertelsman did has been vacated.  This case is appearing before

5   me this morning as if the case had been indicted, and the prior

6   legal rulings have been vacated, and we're here kind of at least

7   with me for the first time.

8        So having said all that, Madam Clerk, if you would

9   swear the defendant.  Mr. Fessler, if you and your client would

10  come around to the podium, please.

11              (The defendant was sworn by the deputy clerk.)

12       THE COURT:  Mr. Kimberly, I'm going to assume that if

13  you answer a question that I ask, that you understood the

14  question, all right?

15       THE DEFENDANT:  (Nodding affirmatively).

16       THE COURT:  If you don't tell me, that's a fair

17  assumption, okay?

18       THE DEFENDANT:  (Nodding affirmatively).

19       THE COURT:  Now, you need to answer yes or no, okay?

20       THE DEFENDANT:  Yes.

21       THE COURT:  If you need to consult with Mr. Fessler

22  before answering a question, I want you to feel free to do so,

23  okay?

24       THE DEFENDANT:  Okay.

25       THE COURT:  Now, how old are you now, sir?

1            THE DEFENDANT:  I'm 56.

2            THE COURT:  56, okay.  And I take it, I know you had

3    Mr. Howe, I think, before, Steve Howe.

4            THE DEFENDANT:  That's correct.

5            THE COURT:  Do you think you've had enough time to

6    discuss your options with Mr. Fessler before this morning?

7            THE DEFENDANT:  Yes.

8            THE COURT:  Have you, and I'm sure you have, given the

9    age of this case, but do you think you have been apprised of the

10   facts that are -- I know there are some facts contained in this

11   plea agreement, but have you gone over those facts with

12   Mr. Fessler in an effort to determine whether or not what you did

13   in this case violates Count 1 of -- counts -- Count 1 of this

14   indictment?

15           THE DEFENDANT:  Yes.

16           THE COURT:  How much education do you have?

17           THE DEFENDANT:  High school, some college.

18           THE COURT:  Okay.  Are you taking any medications?

19           THE DEFENDANT:  No.

20           THE COURT:  Mr. Fessler, based on your discussions

21   with your client, do you have any question at all about his

22   competence to enter the plea?

23           MR. FESSLER:  Judge, I've had several meetings with my

24   client.  I have no questions about his competency.

25           THE COURT:  Mr. McBride?

         MR. McBRIDE:  Your Honor, the United States has no
reason to doubt Mr. Kimberly's competence to enter a plea today.
         THE COURT:  Was there just one indictment in this
case, or was it superseded?  Do you know?
         MR. McBRIDE:  Your Honor, if you'll give me a minute.
         MR. FESSLER:  I believe there was just one.  There was
talk about a superseding indictment if we were going to go to
trial.  That never occurred.
         THE COURT:  Okay.  So the indictment was returned, and
this tells you how old the case is, we still had blue file
folders.  This is before ECF.
         MR. FESSLER:  February 9, 2005, Judge.
         THE COURT:  You were the original prosecutor in this
case, Mr. McBride?
         MR. McBRIDE:  No, Your Honor.  That was Mr. Wohlander,
who is no longer with our office.  I did the restitution hearing,
Your Honor.
         THE COURT:  All right.  The indictment that was
returned in February of '05, you acknowledge receiving a copy of
that about four years ago?
         THE DEFENDANT:  Yes.
         THE COURT:  And you went over it at that time with
Mr. Howe; did you not?
         THE DEFENDANT:  That's correct.
         MR. FESSLER:  Judge, do you want my copy of the

1  indictment?

2          THE COURT:  No, I found it.  There are so many

3  pleadings, I wanted to make sure I was able to see it.  Now,

4  Mr. Kimberly, do you have any prior felonies?

5          THE DEFENDANT:  No, sir.

6          THE COURT:  You understand that this is a felony in

7  Count 1?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Felony conviction deprives you of certain

10 civil rights, and I'm sure Judge Bertelsman went over many of

11 these with you, but they would include the right to vote, serve

12 on a jury, hold public office as well as possess a firearm for

13 any reason at all.  Understand?

14         THE DEFENDANT:  That's correct.

15         THE COURT:  Now, the Court has appointed Mr. Fessler

16 to represent you in this case.  I think you're appointed counsel,

17 are you not, sir?

18         MR. FESSLER:  I am, Your Honor.

19         THE COURT:  Are you satisfied with the advice that

20 he's given you in this case?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  Now, the marshal, or the deputy marshal

23 gave me a copy right before court of this plea agreement.  Now,

24 there are a number of signatures on each document.  There's

25 actually two documents.  One is a plea agreement and one is a

sealed supplement.  In the interim period between your initial

guilty plea and now, the Court has gone to having two documents

at pleas.  One is a supplement that's always filed under seal,

and the other is a plea agreement, if, in fact, there is a plea

agreement.

Let me ask you about these signatures, Mr. Kimberly.

I recognize Mr. McBride's signature from other cases he has in

this court.  Mr. McBride, you signed on behalf of Erin May?

MR. McBRIDE:  That's correct, Your Honor.

THE COURT:  The Court recognizes Mr. Fessler's

signature.  There's a signature for Daryl Kimberly on both these

documents, looks like it was signed today.  Mr. Kimberly, is this

your signature on these documents?

THE DEFENDANT:  Yes, sir.

THE COURT:  Did you read both documents before signing

them?

THE DEFENDANT:  Yes, sir.

MR. FESSLER:  Judge, so you know, there are initials

on page 6 of myself, Mr. Kimberly and Mr. McBride.  Just so

you're aware, if you want to ask if those are his initials.

THE COURT:  Paragraph 6(c) has some initials, RKM, DFF

and DK.  Those are your signatures, DK, Mr. Kimberly?

THE DEFENDANT:  Yes, sir.

THE COURT:  And the attorneys as well?

MR. FESSLER:  Yes, Your Honor.

1          THE COURT:  Mr. McBride?

2          MR. McBRIDE:  Yes, sir.

3          THE COURT:  Mr. Kimberly, has anyone made any promises

4    to you -- first of all, any promises at all which are not

5    contained in this plea agreement or the supplement?

6          THE DEFENDANT:  No, sir.

7          THE COURT:  Has anyone made any exact predictions as

8    to what your exact sentence is going to be if you plead guilty?

9          THE DEFENDANT:  A range, but no exact.

10         THE COURT:  Now the range, the reason I have this

11   older manual, this is the 2003 guideline manual.  I'll tell you

12   that the way that the law works with respect to the sentencing

13   guidelines, in part, the probation officer, if there are

14   different guideline manuals which are in effect at the time that

15   the offense was committed and the time that you are likely to be

16   sentenced, the probation officer, as a matter of law, has to use

17   the guideline manual which is more favorable to you.  Do you

18   understand that?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  So the probation officer, it's my

21   understanding from speaking with her, the 2008 manual is more

22   harsh for this type of offense than the 2003 manual.  So it's the

23   2003 manual that will likely control.  Do you understand that?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  Have you talked to him about that?

1          MR. FESSLER:  Judge, we have not.

2          THE COURT:  I'm not going to get into all the details,

3     but there's a constitutional provision that precludes using a

4     harsher manual, we'll use laymen's terms, and that probably will

5     be something that in all likelihood will apply in your case.  So

6     that's why I have the older version here.

7          Mr. Kimberly, did you have any questions about

8     anything in the plea agreement that your attorney couldn't answer

9     for you?

10          THE DEFENDANT:  No, sir.

11          THE COURT:  Now, we discussed earlier, when I asked

12     you if any predictions had been made about what your exact

13     sentence may be, you said a range.  There is going to be a

14     guideline range recommended to me by the probation officer.  Do

15     you understand that?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  And, in fact, that range is an advisory

18     range.  I think the last time, the Booker case came out in

19     January of '05, and now we have four years of time which has

20     passed since then.  So we have a little bit better idea of what

21     that -- what advisory guidelines means.  I will tell you that

22     despite the fact that the guidelines were advisory, it's still my

23     obligation, as a matter of law, to have Probation prepare

24     guidelines for the Court and consult the guidelines.  They are

25     just one factor I need to look at, but I will be looking at

1 those.  Do you understand that?

2           THE DEFENDANT:  Yes, sir.

3           THE COURT:  Now, I understand the sentence that Judge

4 Bertelsman originally imposed, I think, was the statutory

5 maximum; was it not?

6           MR. McBRIDE:  That's correct, Your Honor.  It was in

7 excess of the guidelines.

8           THE COURT:  All right.  So you're certainly familiar

9 with what may occur.  As a matter of law, the Court could

10 sentence you to the statutory maximum.  The Court could sentence

11 you within the range recommended by the Sentencing Commission.

12 The Court could sentence you below the range recommended by the

13 Sentencing Commission.  There's no minimum -- is there a

14 five-year minimum mandatory on this or not?

15           MR. McBRIDE:  No, Your Honor.

16           THE COURT:  Okay.

17           PROBATION OFFICER:  I'm sorry, Your Honor.

18           THE COURT:  There is no minimum mandatory?

19           PROBATION OFFICER:  No, sir.

20           THE COURT:  So the important thing for you to

21 recognize, Mr. Kimberly, is the sentencing is ultimately up to

22 the Court.  Understand?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  And the Court cannot exceed the statutory

25 maximum for this.  Understand?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Now, have you and your attorney spoken

3    about how the guidelines may apply in your case?

4          THE DEFENDANT:  Yes, we have.

5          THE COURT:  Now, this written plea agreement, I've

6    already had you acknowledge your signature's here as well as your

7    initials.  It is my common practice, Mr. Kimberly, to ask the

8    prosecutor to summarize the plea agreement for the Court.  I'm

9    going to call on Mr. McBride to do so at this time.  I want you

10   to pay close attention, because if there's anything different

11   than you believe your plea agreement to be, you need to let me

12   know, okay?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  Mr. McBride?

15         MR. McBRIDE:  Thank you, Your Honor.  Judge,

16   Mr. Kimberly is entering a guilty plea to Count 1 of the original

17   indictment.  Count 1 of the indictment charges a violation of 18

18   United States Code 2423(b), which is travel with the intent to

19   engage in illegal sexual conduct.

20         The United States, at sentencing, will move to dismiss

21   Counts 2 and 3 of the indictment.

22         Your Honor, paragraph 2 sets forth the essential

23   elements of Count 1.

24         THE COURT:  Let me ask, what are Counts 2 and 3?

25         MR. McBRIDE:  Give me a moment, Your Honor.

1          THE COURT:  Do you know, Mr. Fessler?

2          MR. McBRIDE:  Count 2 is the violation of 18 U.S.C.

3   2422, which is the use of a facility or means of interstate

4   commerce to knowingly persuade, induce, entice or coerce an

5   individual who has not obtained the years of 18 to engage in

6   sexual activity.

7          THE COURT:  That's use of a phone, computer or e-mail?

8          MR. McBRIDE:  Yes, sir.  E-mail, specifically, in this

9   case.

10          THE COURT:  Okay.

11          MR. McBRIDE:  Count 3 is a violation of 18 U.S.C.

12   1470, which is use of a facility or means of interstate commerce

13   and wire communications to transfer obscene material to another

14   who has not yet obtained the age of 16.

15          THE COURT:  Is this like use of a web cam?  I've

16   reviewed the file, and there was some web cam use or something

17   along those lines.  Is that what that involves?

18          MR. McBRIDE:  Yes, sir.

19          MR. FESSLER:  That was the allegation, Judge.

20          THE COURT:  All right.  I understand that.  But the

21   reason I bring that up, Mr. Kimberly, is the sentencing

22   guidelines, whether or not we use the 2003 manual or the 2008

23   manual, there is a section called 1B1.3, and that's, in essence,

24   the relevant conduct provisions of the guideline manual.  And the

25   fact that Counts 2 and 3 are dismissed, the facts contained or

the allegations in paragraphs 2 and 3 -- I mean Counts 2 and 3,

if there is something that was involved in those counts that the

probation officer thinks may be relevant to me for purposes of

sentencing, the fact that you're not pleading guilty to those

counts does not necessarily preclude the probation officer from

reviewing the facts of those counts in giving me kind of an idea

of the totality of what happened here.  Do you understand that?

THE DEFENDANT:  I believe so.

THE COURT:  Okay.  And that's what's called relevant

conduct.  I'm not saying it's going to occur.  Frankly, I haven't

even looked at the old presentence report, because the conviction

was vacated, and I think that would prejudice the Court.  So I

didn't think it was appropriate to do so.  So I just want to make

sure you understand relevant conduct.  You can talk to him, sure.

(Mr. Fessler and the defendant conferred.)

THE COURT:  Go ahead, Mr. McBride.

MR. McBRIDE:  Thank you, Judge.  Judge, paragraph 3

sets forth the factual stipulations according to the essential

elements of the charge, and is agreed to by the parties.  Because

of your practice, I will skip reading that.

THE COURT:  Very well.

MR. McBRIDE:  Paragraph 4 sets forth the maximum

punishment, which for Count 1 is imprisonment of not more than 30

years, a fine of not more than $250,000, and a term of supervised

release for any number of years.  There is also a $100 mandatory

1  special assessment.

2          THE COURT:  Was that paid before?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  You've already paid that?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Paragraph 5, the United States agrees it

7  will not take a position on whether the defendant should receive

8  a lifetime term of supervised release, and the defendant reserves

9  the right to argue for a term of supervised release that is less

10 than life.

11         At paragraph 6, Your Honor, the United States and the

12 defendants make the following guideline calculations

13 recommendation to the Court, and each party may object to or

14 argue in favor of other calculations, and the parties recognize

15 this recommendation does not bind the Court.

16         That recommendation is as follows, Your Honor.  First,

17 that the November 5, 2003 guidelines manual applies in

18 determining Mr. Kimberly's guideline range.

19         Second, pursuant to Section 2A3.2(a)(1) of the

20 guidelines, the base offense level is a 24.  Under Section 3E1.1,

21 unless the defendant commits another crime, obstructs justice, or

22 violates a court order, the parties recommend a decrease in the

23 offense level by two levels for the defendant's acceptance of

24 responsibility.  The United States will not, Your Honor, be

25 moving for the third level for acceptance of responsibility.

1       THE COURT:  Let me ask a question about

2   paragraph 6(c), because in reviewing the sentencing transcript

3   the last time, there was an enhancement for obstruction.  Is it a

4   fair statement to conclude that paragraph 6C only would include

5   obstruction from this date forward?  You're still -- he's

6   still -- the recommendation is he receive a two-level reduction

7   for acceptance?

8       MR. McBRIDE:  Correct, Your Honor.

9       THE COURT:  Now, I understand the general basis of

10  what occurred as far as the finding of obstruction by Judge

11  Bertelsman the last time.

12      MR. McBRIDE:  Yes, sir.

13      THE COURT:  You had, I think initially -- not you, but

14  Mr. Wohlander or Mr. Howe had negotiated a plea agreement, and I

15  think there was still, and correct me if I'm wrong, there was

16  still an agreement to ask the Court to give him acceptance, but

17  Judge Bertelsman didn't do that?

18      MR. McBRIDE:  That's correct, Your Honor.  And that's

19  still the agreement here.  I know that typically, when there is a

20  determination of obstruction of justice in the guideline

21  calculation, that that obviates the acceptance of responsibility.

22  But because of the unique circumstances and to facilitate an

23  agreement, we have agreed that we're going to make the

24  recommendation for the two levels regardless of whether or not

25  the Court finds obstruction.  We're going to make that

1  recommendation.

2        THE COURT:  When you say that if something occurs in

3  the future, I'm not saying it will, hypothetically.

4        MR. McBRIDE:  Yes, sir.

5        THE COURT:  Between now and sentencing that was

6  unknown as of today's date, that might -- that would be

7  different?

8        MR. McBRIDE:  Would change our position.  What's

9  happened in the past would not change our position.

10       THE COURT:  So what has occurred prior to today, even

11  if the Court were to make a finding of obstruction, and I'm not

12  saying I will or I won't at this point, because Probation hasn't

13  even made the recommendation to the Court.  They have given me

14  what they think may be the recommendations here.  But it is your

15  intention to move for a two-level reduction for acceptance?

16       MR. McBRIDE:  Yes, sir.

17       THE COURT:  Is that your understanding, Mr. Fessler?

18  I want to make sure we're all on the same page here.

19       MR. FESSLER:  It is, Judge.  In fact, when Miss May

20  and I were negotiating the case, we disagree we obstructed in the

21  first case.  They say we did.  Regardless of which, when the case

22  comes down, it's a clean slate in terms of Mr. Kimberly's

23  activity in this case now, and that there has been no

24  obstruction, quote unquote, in the second time around.  And

25  therefore, the acceptance of responsibility is applicable.

1    THE COURT:  Okay.  And I think it's important -- first

2   of all, do you understand what he just said?

3    THE DEFENDANT:  Yes, sir.

4    THE COURT:  Now, it is a clean slate.  When a case is

5   vacated, that's what that means.  It means your conviction is

6   vacated, remanded for further proceedings.  That's what we're

7   having here.  I think it is fair, though, to say that what

8   occurred before today, if the United States still wants to argue

9   that enhancements apply, they have the right to do that, to the

10  extent not otherwise agreed in the plea agreement.  Do you

11  understand that?

12    MR. FESSLER:  That is totally our understanding also,

13  Judge.

14    THE COURT:  All right.  I just wanted to make sure.

15    MR. FESSLER:  We agree to disagree on those kinds of

16  issues.

17    THE COURT:  So let me stop you real quick, and then

18  we'll proceed further here, Mr. McBride.  It states at

19  paragraph 6 that you and the United States recommend these

20  guideline calculations.  They may object to or argue in favor of

21  other calculations.  That's what we've been talking about,

22  Mr. Kimberly.  That you can argue for certain guidelines which

23  are not in this plea agreement.  So can the United States.  Do

24  you understand that?

25    THE DEFENDANT:  Yes, sir.

1        THE COURT:  Where the recommendation does not bind the

2   Court, what that means particularly is when the probation officer

3   is preparing a presentence report, when I'm ultimately

4   determining what the guidelines are, I'm not going to be bound,

5   nor is Probation bound by these recommendations.  Understand?

6        THE DEFENDANT:  Yes, sir.

7        THE COURT:  Now, as a general rule, anything that

8   increases the guidelines, an enhancement, the burden to prove

9   that is on the United States by a preponderance of the evidence.

10  That hasn't changed at all since you were here the last time.  Do

11  you understand?

12       THE DEFENDANT:  Yes, sir.

13       THE COURT:  Anything that decreases the guidelines,

14  reduction, the burden will be on you to show that that will be

15  applicable by the same evidentiary standard.  Do you understand

16  that?

17       THE DEFENDANT:  Yes, sir.

18       THE COURT:  Go ahead, Mr. McBride.

19       MR. McBRIDE:  Thank you, Your Honor.  At paragraph 7,

20  the parties have no agreement with regard to Mr. Kimberly's

21  criminal history category.  Paragraph 8, Your Honor, stipulates

22  that no agreement exists between the defendant and the United

23  States regarding which, if any, enhancements should be applied to

24  the defendant's base offense level pursuant to the guidelines.

25  Mr. Kimberly understands the ultimate decision on which, if any,

enhancements are supported by the evidence is to be decided by

the Court.

Importantly, Your Honor, in paragraph 9, Mr. Kimberly

waives his right to appeal and his right to collaterally attack

the guilty plea and conviction. Although it does not expressly

say so, by that omission, he's reserving his right to appeal the

sentence.

THE COURT: Is that your understanding, Mr. Fessler?

MR. FESSLER: Yes, Your Honor.

THE COURT: Yours as well, Mr. Kimberly?

THE DEFENDANT: Yes, sir.

THE COURT: I believe the last important provision,

Your Honor -- no, I'm sorry. At paragraph 10, the United States

agrees not to bring additional charges against Mr. Kimberly based

on evidence in its possession at the time of the execution of

this agreement and arising out of the defendant's conduct within

the Eastern District of Kentucky, unless the defendant breaches

this agreement.

At paragraph 11, Your Honor, Mr. Kimberly has been

advised and understands that the Sex Offender Registration and

Notification Act, a federal law, requires him to register and

remain registered in each of the following jurisdictions where

the defendant resides, where the defendant is employed, and where

the defendant is a student. Mr. Kimberly understands that the

requirements for registration include providing his name,

1   residence address, and names and addresses of any place where the

2   defendant is or will be employed or is a student, among other

3   information.

4        Mr. Kimberly also understands the requirement to keep

5   the registration current, including informing at least one

6   jurisdiction in which the defendant resides, is employed or is a

7   student not later than three business days after any change in

8   the defendant's name, residence, employment, or student status.

9        He understands and has been advised that a failure to

10  comply with these obligations may subject him to prosecution for

11  failure to register under federal law; specifically, Title 18,

12  Section 2250, which is punishable by a fine, imprisonment, or

13  both.

14       Judge, I believe those are all the operative

15  components of this plea agreement

16       THE COURT:  Mr. Kimberly, did you -- I know there were

17  a few interruptions there when I asked some follow-up questions.

18  First of all, did you hear the summary provided by the

19  prosecutor?

20       THE DEFENDANT:  Yes.

21       THE COURT:  Is that your understanding of the plea

22  agreement you have with the United States?

23       THE DEFENDANT:  Yes.

24       THE COURT:  Mr. Fessler?

25       MR. FESSLER:  Yes, Your Honor.  I'd only like to add

1  that although, if you'll note on the last page of the plea

2  agreement, the signature line is dated as of today's date, I

3  wanted Court to know that this has been a long process.  Actually

4  got the first plea agreement to start working on with Miss May, I

5  believe, in October of -- no, it couldn't have been.  Whenever I

6  first got the case.  I can't remember when I was first appointed,

7  Judge.  But quite a while ago.

8        One of the first signings was in January of this year.

9  Another one happened earlier this year, the signatures

10  acknowledging we were going to go forward.  There was a lot of

11  work and time put into this plea agreement.  It wasn't just

12  dreamed up this morning.

13        THE COURT:  Is that fair, Mr. Kimberly?

14        THE DEFENDANT:  Yes, sir.

15        THE COURT:  So there's been at least a couple of

16  drafts of this plea agreement prior to the one that I actually

17  have for my consideration this morning?

18        THE DEFENDANT:  Correct.

19        THE COURT:  All right.  One other thing.  The issue of

20  restitution we talked about earlier, I cannot recall seeing

21  anything regarding that in the plea agreement at all.  But does

22  everybody understand that that may be part of the sentence?  The

23  amount of that would be determined by the Court.  Is that your

24  understanding?

25        MR. FESSLER:  Judge, as a matter of fact, during the

negotiations of the plea, Miss May and I agreed, and she started

inquiring as to what expenses had been inurred over the last

years since the plea and sentencing the first time around.  The

number is drastically reduced.

THE COURT:  Probation, as part of the presentence

report -- I understand there was a prior presentence report

prepared, and the preparation of a prior report would ordinarily

give the Court a ground to waive the presentence report and do

something in lieu of that.  I think it would be best -- the

Court, if I accept your plea, Mr. Kimberly, one of the things

Probation is going to do is look into this idea of restitution,

whether or not any amount is -- should be imposed by the Court.

I think giving the probation officer an opportunity to

do that and prepare another report -- I mean, a lot of the

information is going to be the same, but I do think that that

would be helpful, versus just doing a sentencing memorandum.

Thoughts on that?

MR. FESSLER:  Defendant would greatly appreciate a new

PSR.  I don't want to overburden Probation.  We need a fresh look

at this.

THE COURT:  I tend to agree.  Mr. McBride?

MR. McBRIDE:  We agree, Your Honor.

THE COURT:  Let me see here.  Now, the Court, in

addition to the sentencing guidelines, which we have been

discussing this morning, is going to be looking at other factors

1  at sentencing.  We discussed the statutory maximum penalties.

2  The statute, 18 U.S. Code Section 3553(a), lists certain

3  statutory sentencing factors.  They would include the nature and

4  circumstances of the offense, your history and characteristics,

5  as well as a sentence that would promote respect for the law,

6  provide just punishment, afford adequate deterrence to others and

7  protect the public.  Those are the factors set forth in 3553(a).

8  I'm going to be looking at those at sentencing as well.  Do you

9  understand that?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Now, you have retained your right to

12  appeal the Court's sentence, and sentencing appeals have two

13  primary factors, if you will.  There's a procedural

14  reasonableness that I have to comply with to show any

15  appellate -- the Sixth Circuit, if you choose to appeal or the

16  U.S. chooses to appeal the sentence, whether or not I went

17  through the factors I'm supposed to go through in sentencing.

18  That's one aspect of a sentencing.

19          The other is a substantive reasonableness, whether or

20  not the sentence itself is reasonable.  That's the standard that

21  currently exists.  I don't think it will change between now and

22  any sentencing appeal.  Do you understand that?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Now, Mr. McBride summarized the maximum

25  statutory penalty, 30 years in prison, a lifetime supervised

release, a $250,000 fine, plus a $100 special assessment.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  The term of supervised release, in the plea agreement, at paragraph number 5, the government has agreed not to take a position on whether or not your supervised release should be for a life term, and you reserve the right to argue for a term that is less than that.  Whatever the amount of time is, and the probation officer will make a recommendation to me based upon a number of factors, whatever amount of time supervised release is, you're going to be required to comply with a number of conditions of that supervised release.  Because of the nature of the offense, some of those conditions are somewhat onerous, given the fact that this involves the alleged inducement of a minor to travel from one state to another to engage in sexual activity.

This is a sex offender type case so the sex offender supervised release condition will likely be part of your supervised release.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  If you were to violate any of those conditions, you need to understand that your supervised release could be revoked, based upon a finding that you violated.  Understand?

THE DEFENDANT:  Yes, sir.

1    THE COURT:  And in the event of a revocation, the

2  Court could impose an additional term of imprisonment, followed

3  by another term of supervised release.  All right, sir?

4    THE DEFENDANT:  Yes, sir.

5    THE COURT:  We've already discussed restitution.  And

6  I would just ask the attorneys, I know a lot of time has passed

7  since the last sentencing here.  To the extent that you can

8  assist Probation in making that recommendation to me -- you have

9  indicated substantially less.  If, in fact, that's the case, and

10  Mr. McBride agrees, then perhaps you can agree on a restitution

11  amount.  If you can't, I may have to hear some proof.

12    I know the prior testimony of the young lady from, I

13  think it was U.K., that's still testimony under oath that perhaps

14  I could consider, but I think there's been some changed

15  circumstances since then which would cause her testimony to need

16  to be altered substantially, according to Mr. Fessler.

17    So I don't know if it's necessarily fair for me to

18  just consider that as prior statements under oath, given the fact

19  that what has occurred since she testified, according to what you

20  have said, isn't actually what has happened with respect to this

21  young person.

22    MR. McBRIDE:  Judge, perhaps I can help a little bit

23  here.  I have spoken to the victim's mother, who is present,

24  about the issue of restitution.

25    THE COURT:  Is that the young lady in the back?

1       MR. McBRIDE:  Yes, Your Honor.  And right now, their

2  position is that they would like to get reimbursed for costs they

3  have incurred as a result of some healthcare that the young lady

4  victim has undergone already.  But that asking for future

5  restitution, as we did previously, we are probably not going to

6  pursue.

7       THE COURT:  Okay.  Well, actual costs, I think, are

8  much easier to quantify.

9       MR. McBRIDE:  Yes, sir.  We are gathering --

10      THE COURT:  I think the lion's share of what was

11 ordered previously was the future costs.

12      MR. McBRIDE:  Yes, sir.

13      THE COURT:  I only bring it up, because if you can

14 come up with -- you may not agree to it, but that certainly makes

15 my job more simple -- simpler at sentencing.  Actual costs,

16 whether or not they are causally linked to this conduct, that's

17 something I think I can more easily dispense with if it's a

18 concrete figure.

19      So you can share that with Probation, and then if you

20 object, we'll hear it at sentencing.  I'll go over objections

21 here in a little bit, Mr. Kimberly.  Thank you, Mr. McBride.

22      All right.  The sentencing guidelines.  We do have the

23 recommendations in the plea agreement.  We've already discussed

24 the fact that they're not binding.  The way the guidelines are

25 calculated, Probation will interview you, Mr. Kimberly, again.

They'll prepare a report. The report is detailed. It contains facts about the offense. It contains sentencing guidelines. It contains your background, work history, education history. It's a very detailed report.

About five weeks before sentencing, a copy of the report is mailed to your attorney, who will then go over it with you. If you object to anything in that report, Mr. Fessler certainly understands that he needs to notify the probation officer of what the objection is, usually in a letter form, setting forth the objection.

If there are objections which cannot be resolved before sentencing, I will hear the objection, have a hearing if necessary, hear proof if necessary, and then finally resolve any objections. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Now, I do like at this stage, Mr. Kimberly, to give defendants an idea of what may be the applicable guidelines. And the figures I'm going to give you are not necessarily binding, because the probation officer will ordinarily err on the side of including a potential enhancement that may apply, just for purposes -- more for due process purposes to give everybody an idea, this may come into play, this may come into play here. I'm not saying it will, but the probation officer has given me some tentative numbers. She believes that the same base offense level that you're

1  recommending, the 24, is the one that should apply here.  I need

2  to pull up this section.  I think it's been renumbered in the

3  newer version.

4          Now, there are two specific offense characteristics

5  that the probation officer believes may come into play.  One is

6  section 2A3.2(b)(2)(B).  And it states if -- the first

7  characteristic says if the victim was in the care, custody or

8  supervisory control of the defendant, increase by two levels.

9  That's not applicable here.

10         (b)(2) says if Section (b)(1) does not apply, which it

11 does not, and a participant otherwise unduly influenced the

12 victim to engage in prohibited sexual conduct, increase by two.

13 May be applicable here, according to the probation officer.

14         If they submit in the presentence report that it is

15 applicable and your attorney objects to that, he certainly can.

16 If the probation officer determines that that does not apply, and

17 the United States believes it does, they can object.  Understand

18 that?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  The other one that I think, given the --

21 and I was glancing through the factual statements in

22 paragraph 3(b), and I think this one, given the fact that you

23 have admitted to having contact with the victim via the Internet,

24 I think that one may apply.  I don't know if there would be an

25 objection.  Perhaps there would.

1          The second one is (b)(3), and it states if a computer

2   or Internet access device was used to either persuade, induce,

3   entice or coerce the victim to engage in prohibited sexual

4   conduct or, which I think is more applicable here, or facilitate

5   transportation or travel, by the victim or a participant, to

6   engage in sexual conduct, add two.  If you used a computer to

7   induce, that may be applicable as well.

8          Again, if the probation officer believes it applies

9   and you disagree, Mr. Fessler can object.  Similarly, if the

10  probation officer does not include it and the government thinks

11  it should, they can object.  Understand that?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Now, I'm going to just include for

14  purposes of our discussion the potential of a two-level

15  enhancement for obstruction, as kind of a worst case scenario for

16  you.  If we include all of those enhancements and take off two

17  levels for acceptance of responsibility, by my math, that would

18  be a total offense level of 28.  And I think your criminal

19  history category still would be a 1, which would yield an

20  advisory guideline range of 78 to 97 months.  Do you understand

21  that?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Now, if there's no obstruction or there's

24  no potential other enhancements, you would be -- the guidelines

25  would be less.  I'm not going to give you all the potential

scenarios if some apply and others don't. But the important

thing for you to recognize is the 78- to 97-month range that I've

just provided to you is a tentative range based upon what

Probation believes may apply here. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And if you -- I think the more important

thing for you to recognize is if the guidelines are higher than

you anticipate at sentencing, you certainly have a right to

object to that. You've acknowledged that, correct?

THE DEFENDANT: Yes, sir.

THE COURT: But the important thing for you is you

can't come back and say, well, you know, Judge, I want to

withdraw my guilty plea because nobody told me the guidelines

would be so high. You can't do that. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: You can move to do that, but chances are

if I'm reviewing the transcript of this plea, you're going to be

hard pressed to say that you weren't advised of what the

guidelines may be, because that's why I'm spending so much time

going over them with you. Understand?

THE DEFENDANT: Yes, sir.

THE COURT: They are just one factor. Mr. Fessler has

convinced me in other cases and Mr. McBride has convinced me in

other cases that the guidelines shouldn't be followed in a

particular case for a variety of reasons. And I'm sure he'll, to

1  the extent he thinks that would be a good way to proceed here,

2  he'll make those same arguments for you.  Do you understand that?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  The United States can argue contrary to

5  that.  All right, sir?

6            THE DEFENDANT:  Yes, sir.

7            THE COURT:  Okay.  The Court will take the plea

8  agreement under submission pending preparation of the presentence

9  report.  I will ask that the plea agreement be stamp filed

10 tendered.  I'll wait until the presentence report is prepared

11 until I am able to accept it fully, and I'll retain the original

12 in the working file of the Court until sentencing.

13           We've discussed the presentence report, the objection

14 process, and you understand that, correct?

15           THE DEFENDANT:  Yes, sir.

16           THE COURT:  Now, this sealed plea supplement, you have

17 acknowledged your signature on here.  You understand that you

18 have agreed not to cooperate with the United States, and that's

19 what this says?

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  I'll order that this be filed under seal,

22 consistent with the practice of the Court.

23           There is no parole, Mr. Kimberly, so if you are

24 sentenced to a term of imprisonment for this offense, you're not

25 going to be released early on parole.

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  There's an 85% rule.  If you're a model

3    inmate, you can receive up to 54 days of good time per year.  But

4    that's not something that I control.  That's within the purview

5    of the Bureau of Prisons.  Do you understand that?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Now, your appellate rights.  We discussed

8    this idea at paragraph number 9 of your plea agreement that

9    you're waiving your right to appeal and collaterally attack the

10   guilty plea and conviction.  You're retaining your right to

11   appeal the sentence.  Do you understand?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  You're also, I guess, retaining your right

14   under limited circumstances to collaterally attack the sentence.

15   Understand?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  Now, by pleading guilty, you're not going

18   to be able to appeal the fact that you are guilty.  You certainly

19   understand that?

20         THE DEFENDANT:  Yes, sur.

21         THE COURT:  The appeal of any sentence, we discussed

22   what the standards of review are for that.  I want to discuss

23   with you this collateral attack business, because what that

24   involves is filing a separate lawsuit later, in essence

25   challenging your conviction on some alleged constitutional basis.

1  I'm not going to suggest what that may be, but many times,

2  defendants file what is called a 2255 motion to vacate or set

3  aside or correct their conviction, alleging that their

4  constitutional rights were violated in some way.  Paragraph 9 of

5  your plea agreement indicates that you're giving up your right to

6  file that type of separate lawsuit, challenging your conviction.

7  Do you understand that?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  So if you get to an institution and you're

10  in the law library and someone says you have a good claim here,

11  you should file this motion, and if -- I suppose if it involves

12  the sentence, perhaps you could file that.  But if it involves

13  the conviction itself, you're not going to be able to do that,

14  because you're waiving that right.  Do you understand that?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Additionally, if the Court sentences you

17  to X term of imprisonment and includes an enhancement, let's say

18  this computer enhancement, use of a computer, based upon your

19  e-mail chain or e-mail threads back and forth to the victim here,

20  and you don't appeal that, you're satisfied with the Court's

21  sentence, and there's no appeal of the sentence, the fact that

22  you didn't appeal will ordinarily preclude you from raising

23  issues in a motion to vacate that you could have raised on direct

24  appeal.  Do you understand that?

25          THE DEFENDANT:  Yes, sir.

1          THE COURT:  Okay.  Having advised you of the rights

2     you're giving up in paragraph number 9 of this plea agreement, is

3     it still your intention to waive those rights?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  The Court finds that the waiver of appeal

6     and the waiver of the right to attack collaterally the guilty

7     plea and conviction is a knowing and voluntary waiver and that

8     Mr. Kimberly understands the consequences of both waivers.  Of

9     course, everyone acknowledges that he has retained the right to

10    appeal the sentence.

11          Now, by pleading guilty, you do give up your right to

12    a jury trial.  We have a jury trial, I think, set in this case

13    for March 10th, I think, is the date.  Maybe it's March 16th.  I

14    can't remember.

15          MR. FESSLER:  I don't know which it is, Judge.

16          THE COURT:  It's Tuesday, the 10th, that's right.  If

17    you were to plead not guilty, we'd have a trial on all three

18    charges in the indictment.  You'd be presumed innocent at that

19    trial.  The United States would have to prove your guilt by

20    competent evidence beyond a reasonable doubt before you could be

21    found guilty.  All right, sir?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  At that trial, your attorney would be

24    present with you throughout the proceeding, and he would have the

25    ability to cross-examine all the witnesses called by the United

1  States, all right?

2         THE DEFENDANT:  Yes, sir.

3         THE COURT:  He also has a right, on your behalf, to

4  compel the presence of witnesses by issuing subpoenas for

5  individuals to come in to court to testify for you at trial,

6  understand?

7         THE DEFENDANT:  Yes, sir.

8         THE COURT:  While you enjoy a constitutional right to

9  testify, you also enjoy a constitutional right to remain silent.

10  If you chose to remain silent at trial, I would tell the jury it

11  would be completely improper for them to consider your silence in

12  any way in determining whether or not you were guilty.  All

13  right, sir?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  Do you further understand by entering a

16  plea of guilty, if the plea is accepted by the Court, you're not

17  going to have a trial, and you'll be waiving your rights not to

18  incriminate yourself, because you're going to have to tell me in

19  a bit what you did which you believe makes you guilty of this

20  offense in Count 1.

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  Do you have a problem doing that?

23         THE DEFENDANT:  No, sir.

24         THE COURT:  Finally, if I accept your plea, you'll be

25  adjudged guilty of Count 1 and sentenced after that presentence

1  report is prepared, okay?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  All right.  Now, Count 1 charges on or

4  about June 9, 2004, Daryl Kimberly did knowingly travel

5  interstate commerce from the state of Virginia to Pendleton

6  County, in the Eastern District of Kentucky, for the purpose of

7  engaging in illicit sexual conduct with a 15-year-old minor

8  female, all in violation of U.S. Code Section 2324(b).  The count

9  is very short.

10          If this case proceeded to trial, the United States

11  would have to prove a couple of essential elements beyond a

12  reasonable doubt.  First, that you traveled from one state to

13  another; that is, Virginia to Kentucky.  Second, that your

14  purpose of traveling was to engage in illicit sexual activity

15  with someone less than 18.  And third, that the intended sexual

16  act would have been a violation of Chapter 109A of federal law if

17  it had been committed; that is, to knowingly engage in a sexual

18  act with another person who had attained the age of 12 years but

19  had not attained the age of 16 years and was at least four years

20  younger than you.  Now, that is set forth in paragraph 2 of the

21  plea agreement.

22          Now, Mr. McBride, I have not looked particularly at

23  2423, the statute itself.  But because you all have put it in the

24  plea agreement, and given what had occurred on appeal, I'm

25  assuming, and correct me if I'm wrong, that these are the actual

1  elements that would need to be proven?

2       MR. McBRIDE:  They are, Your Honor, and we would

3  satisfy the Court, we ran these elements through Justice CEOS

4  program.  They've been working with us on this case since it came

5  back.

6       THE COURT:  Mr. Fessler, are you satisfied that these

7  are the elements?  We have one, two, and then three has two

8  prongs.

9       MR. FESSLER:  Correct.  That is correct.

10      THE COURT:  All right.  Do you understand those

11 elements?  I mean, the last two are fairly technical, but --

12      MR. FESSLER:  Judge, I would add that I actually spoke

13 with Mr. Kimberly's appellate counsel about these elements in the

14 way this was set forth, and he agreed they were set forth

15 correctly also.

16      THE COURT:  Okay.  I know Judge Bertelsman may have

17 asked Mr. Wohlander this, but the third element where it says the

18 intended sexual act would have been a violation of Chapter 109A

19 of federal law if it had been committed, that's defined after the

20 words "that is."  That's what that means?

21      MR. McBRIDE:  Correct, Your Honor.

22      THE COURT:  Let's get to the facts here now,

23 Mr. Kimberly.  Paragraph 3 of your plea agreement states that as

24 to Count 1, the United States could prove the following facts

25 that establish the essential elements of the offense beyond a

reasonable doubt and the defendant admits these facts.  Do you

admit that the United States would be able to prove the facts

contained in paragraph 3 of your plea agreement beyond a

reasonable doubt?

THE DEFENDANT:  Yes, sir.

THE COURT:  So during November, 2003, a female minor

of less than 16 years of age was in an Internet chat room.  And

while she was in that chat room, you contacted her electronically

and asked her age.  Did you do that?

THE DEFENDANT:  Essentially, that's true.  She

contacted me first.

THE COURT:  All right.  Well, then you -- even if she

contacted you first, you followed up?

THE DEFENDANT:  Yes, we talked.

THE COURT:  You talked.

THE DEFENDANT:  Electronically.

THE COURT:  Via the chat room virtual talk, I guess?

THE DEFENDANT:  Exactly.

THE COURT:  The minor female victim advised you she

was 15?

THE DEFENDANT:  Not at that time, but eventually she

did, yes.

THE COURT:  And you added her to your contact list at

some point?

THE DEFENDANT:  That's true.

1          THE COURT:  All right.  Paragraph 3(b) indicates over

2    the next several months, you continued to have contact with her

3    via the Internet and by telephone?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  And then you began asking the minor female

6    victim if she had any sexual experience.  Did you do that?

7          THE DEFENDANT:  It was a mutual --

8          THE COURT:  Even if it was mutual, I'm just reading

9    the plea agreement, Mr. Kimberly.

10          THE DEFENDANT:  That's true.

11          THE COURT:  You did do that?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  All right.  In approximately April of '04,

14   did you tell the minor female victim that you would like to show

15   her what it was like to have sex?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  And then in June of '04, you advised her

18   that you had taken two days off from work and would be traveling

19   from Virginia to Kentucky and described to the minor female

20   victim several sexual acts that you would like to perform with

21   her when you arrived in Kentucky.  Did you do that?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  On June 9, 2004, you traveled from your

24   home in Virginia to the home of the minor female victim in

25   Falmouth, Kentucky.  Did you do that?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  And the purpose of that travel was to

3   engage in sexual acts with the minor female victim?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  In fact, did you engage in certain sexual

6   acts with the minor female victim after you arrived?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  At the time of your travel from Virginia

9   to Kentucky, you were 51 years old, correct?

10         THE DEFENDANT:  That's correct.

11         THE COURT:  And then finally, a couple of weeks

12  later -- or maybe not a couple of weeks.  But looks like on

13  June 21st, there was a follow-up e-mail that you had sent to her

14  regarding what had occurred here?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  Sufficient factual basis, counsel?

17         MR. McBRIDE:  Yes, Your Honor.

18         MR. FESSLER:  Yes, Your Honor.

19         THE COURT:  How do you plead to the charge in Count 1,

20  Mr. Kimberly, guilty or not guilty?

21         THE DEFENDANT:  Guilty.

22         THE COURT:  Here's the plea agreement, Madam Clerk.

23  Based upon your answers to my questions, Mr. Kimberly, as well as

24  the factual statements in paragraph 3 of the plea agreement, I

25  find first that you are fully competent and capable of entering

an informed plea.  Second, that you're aware of the nature of the

charges in Count 1 and the consequences of the plea.  Finally,

that the plea of guilty is a knowing and voluntary one, supported

by an independent basis in fact, containing the essential

elements of the offense.  Your plea is therefore accepted, and

you are adjudged guilty of the offense.  I further find that you

have been made aware of the consequences of entering the plea,

the sentencing guidelines, the statutory maximum penalties, the

potential enhancements which may apply and that the defendant

understands all of those.

I will order a presentence report.  Now, a lot may

have changed in your life since the last time the report was

prepared, Mr. Kimberly.  You need to be honest with Probation

during the preparation of the report.  The reason for doing that

is -- there's a couple of primary reasons.  One, there may be

something about you that would be positive that would otherwise

escape my attention if you weren't candid with Probation.  The

second thing is if you're not, I'll certainly find out about it,

and that can have a negative impact on sentencing.  Do you

understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  Now, I will deny the U.S.'s

motion in limine as moot, given the defendant's guilty plea,

Madam Clerk.  That looks like it's Docket 110.

Sentencing in this case be -- I can give you May 22nd

1  or May 29th, both Fridays.

2        MR. FESSLER:  I prefer May 22, if that's okay with the

3  United States.

4        MR. McBRIDE:  No objection, Your Honor.  That's fine.

5        THE COURT:  Sentencing will be at 11:00 a.m. on

6  May 22nd.

7        MR. FESSLER:  Judge, I do want to advise you for

8  purposes of that your calendar, that sentencing hearing may take

9  some time.  There may be some testimony, maybe even some expert

10  testimony.

11        THE COURT:  Are you not available on the 29th?

12        MR. FESSLER:  Judge, I'm not.  It's my anniversary and

13  we're supposed to go out of town.

14        THE COURT:  I think I'll set it for 9:00 a.m. on the

15  22nd, then.

16        MR. FESSLER:  9:00 a.m.?

17        THE COURT:  Because I have other matters set in the

18  afternoon.  The sentencing, subject to intervening orders of the

19  Court, will be May 22nd at 9:00 a.m.

20        MR. FESSLER:  Judge, I would also ask, by courtesy, if

21  the United States knows they are going to call an expert witness

22  for any reason for any enhancement, that I be given some notice

23  of that, as I may want to employ my own expert, ask the Court for

24  funds and employ my own expert in that regard.

25        THE COURT:  That's a fair request.  I think the only

expert that would be called would be the same woman on

restitution.

MR. FESSLER:  No, Your Honor.  I don't want to speak

for Mr. McBride --

MR. McBRIDE:  Possibly a forensic expert on the

computer.  That might be what Mr. Fessler is referring to,

because of some of the issues of the use of the computer.  We may

need the person who did the forensic exam.

THE COURT:  All right.  I'm also going to tell you,

Mr. Kimberly, to the extent -- I talked about the evidentiary

standards.  Enhancements are required to be proven by a

preponderance of the evidence.  Your plea agreement indicates in

paragraph 3 that certain facts can be proven beyond a reasonable

doubt.  I will tell you that the probation officer, in preparing

the presentence report, it certainly is fair and I think to be

expected, to the extent that you have agreed that certain facts

would be able to be proven beyond a reasonable doubt -- that is a

very high evidentiary standard.  In fact, the highest standard

that we have in law is beyond a reasonable doubt.

Preponderance means that scales of justice is a little

bit down.  Beyond a reasonable doubt is way down.  Something that

is agreed by you to be proven beyond a reasonable doubt -- and I

use this computer example.  If you agreed you sent e-mails or you

were in a chat room -- I've heard a lot of testimony in other

cases, the way the Internet works, depending on your ISP -- this

isn't two cans on the end of a rope.  Usually it goes from here

to -- the last one I had went to Utah and back.  I don't know

where this one goes.  The only reason I bring that up, if I have

an admission by you beyond a reasonable doubt that you contacted

someone via the Internet, that's ordinarily sufficient for

purposes of proving that a computer was used.

I don't know if that's what you're getting at here,

calling a forensic expert to tell me that a computer was used

when he admitted that a computer was used.  I think that might be

not necessary.  I'm not prejudging any enhancement or what you're

referring to, but of all the enhancements I went over, that one

seems like it would be one that ordinarily, there wouldn't have

to be a lot of proof on because of his admission in the plea

agreement.  Is that why you would be calling that person?

MR. McBRIDE:  Possibly.  Also, Judge, on the issue on

obstruction too.

THE COURT:  That's a different matter.  But the

computer enhancement, given the statements, it seems like it may

be necessary.

Your request is a fair one, as far as getting back to

your original question.  With the sentencing being the 22nd,

today is the 20th.  If you give him notice not later than 30

days, do you think that's enough time?

MR. FESSLER:  Thirty days from now would be fine.  I

can get an expert for this issue.

1         THE COURT:  Notice of any experts that would be called

2    at sentencing, again, I mean, compliance with Rule 16 and the

3    expert requirements, what they're going to say, the basis for why

4    they're going to say it and what potential enhancement you plan

5    on calling them for.  And Madam Clerk, we can tweak the language

6    of the minutes after court.  Within 30 days.  Any rebuttal expert

7    will be due 30 days thereafter.

8         MR. FESSLER:  And defense would be happy -- very

9    informal.  We know who it would be, we know what issue.

10         THE COURT:  Who, what, when, where, why, how.

11         MR. FESSLER:  If they are going to call him, that's

12   what we need to know.

13         THE COURT:  That's fair.  Mr. Kimberly, let me now

14   just conclude, and what I'm trying to avoid is a motion Monday to

15   withdraw your plea, because I think given what we've discussed,

16   if a motion was filed, it would likely be denied.

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  I've tried to go over everything I can

19   possibly imagine that could come up.  I can't always anticipate

20   everything.  But I guess the important thing is have you

21   understood everything that's gone on today?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  Do you have any questions about anything

24   that I have asked?

25         THE DEFENDANT:  No, sir.

1          THE COURT:  Do you understand what's going to happen

2  next?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  All right.  Mr. Fessler, anything further

5  in this matter?

6          MR. FESSLER:  No, Judge.  I think you've covered

7  everything.  Thank you.

8          THE COURT:  Mr. McBride?

9          MR. McBRIDE:  No, Your Honor.  I think everything's

10 covered.  Thank you.

11         THE COURT:  We'll have him back here on May 22nd for

12 sentencing.  The trial date of March 10 is vacated.  We're in

13 recess until 11:00.

14              (Proceedings concluded at 10:44 a.m.)

15                          - - -

16                   C E R T I F I C A T E

17          I, LISA REED WIESMAN RDR-CRR, certify that the
   foregoing is a correct transcript from the record of proceedings
18 in the above-entitled case.

19

20  \s\ Lisa Reed Wiesman                April 14, 2009
   LISA REED WIESMAN, RDR-CRR           Date of Certification
21 Official Court Reporter

22

23

24

25